IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF:<br>G.S., the Student, and K.S. and R.S. the Student's Parents,<br><br>    Plaintiffs,<br>v.<br><br>CLARKSVILLE MONTGOMERY COUNTY SCHOOL SYSTEM,<br><br>    Defendant. | )<br>)<br>)<br>)   NO. 3:21-cv-00364<br>)<br>)   JUDGE CAMPBELL<br>)   MAGISTRATE JUDGE HOLMES<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Plaintiffs G.S., and her parents K.S. and R.S. bring this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Plaintiffs appeal an adverse order from a state administrative law judge ("ALJ") finding that Defendant Clarksville Montgomery County School System ("Defendant" or "CMCSS") offered G.S. a "free and appropriate public education" as required by the IDEA for the 2018-2019 and 2019-2020 school years.

Plaintiffs and Defendant filed competing motions for judgment on the administrative record (Doc. Nos. 25 and 28). The Magistrate Judge issued a Report and Recommendation ("R&R") recommending the Court deny Plaintiffs' motion, grant Defendant's motion, uphold the final order of the ALJ, and dismiss this action with no award of relief to Plaintiffs. (Doc. No. 34). Plaintiffs filed objections to the R&R (Doc. No. 35), to which Defendant responded (Doc. No. 36).

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.03(b)(3), a district court reviews *de novo* any portion of a report and recommendation to which a specific objection is made. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). General or conclusory objections are insufficient. *See*

*Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009); *Lea v. United States Dep't of Agric.*, 2018 WL 721381, at *1 (M.D. Tenn. Feb. 6, 2018) ("A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge."). Thus, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Id.* (quoting *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). In addition, the Court does not consider arguments not raised before the Magistrate Judge. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (citing *Ward v. United States*, 208 F. 3d 216 (table) (6th Cir. 2000)). In conducting the review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## II. The IDEA

"The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, requires states that receive federal funds for education to provide every disabled child who wants it a 'free and appropriate public education.'" ("FAPE"). *L.H. v. Hamilton Cty. Dept. of Ed.*, 900 F.3d 779, 788 (6th Cir. 2018) (citing 20 U.S.C. § 1412(a)(1)(A)). The centerpiece of the IDEA's "education delivery system" is the "individualized education program" ("IEP"). *Id.* The school must prepare an IEP that provides the disabled student with a FAPE. *Id.* (citing 20 U.S.C. §§ 1414(d)(1)(A). "The IEP must (1) comply with the procedures set forth in the IDEA and (2) be 'reasonably calculated to enable the [student] to receive educational benefits.'" *Id.* (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982)).

The IDEA provides that "parents who disagree with the appropriateness of an IEP can seek relief" through "a complaint to the school district, followed by a due process hearing at which parents are able to voice their concerns to an [independent hearing officer] of the state educational

2

agency, as determined by state law." *Knable ex rel Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 763 (6th Cir. 2001); *see also* 20 U.S.C. § 1415. After the state administrative law judge issues a decision, the parties may challenge the adequacy of an IEP in federal court. 20 U.S.C. § 1415(i)(2)(A). The party challenging the IEP has the burden of proving by a preponderance of the evidence that the IEP devised by the school district is inappropriate. *Deal v. Hamilton Cty. Bd. of Ed.*, 392 F.3d 840, 854 (6th Cir. 2004).

The district court applies a "modified de novo" standard of review. *Burilovich v. Bd. of Ed. of Lincoln Consol. Schs.*, 208 F.3d 560, 565 (6th Cir. 2000). "The Supreme Court has construed this provision to mean that an initial reviewing court should make an independent decision based on the preponderance of the evidence, but also should give 'due weight' to the determinations made during the state administrative process." *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). The amount of weight due to a state agency's findings "will vary, depending on whether the court is reviewing procedural or substantive matters and whether educational expertise is essential to the administrative findings." *Burilovich*, 208 F.3d at 566. The reviewing court strictly reviews an IEP for procedural compliance. *Id*. However, "[m]ore weight is due to an agency's determinations on matters for which educational expertise would be relevant." *Burilovich*, 208 F.3d at 567.

Courts reviewing administrative appeals under the IDEA engage in a two-part inquiry, first determining whether the school system has complied with the procedures set forth in the IDEA and then assessing whether an IEP developed through those procedures was reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206–07. To this end, the court reviewing an administrative determination "(i) shall receive the records of the administrative

3

proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(i)–(iii).

### III. BACKGROUND

The Magistrate Judge thoroughly recounted G.S.'s background and the development of the two IEPs at issue. As noted in the Report and Recommendation, the facts are largely undisputed. (Doc. No. 34 at 3-19, and n.2). Plaintiffs have not identified any factual inaccuracies. Accordingly, the Court adopts and relies upon the facts as stated in the Background section of the Report and Recommendation.

Plaintiffs claim Defendant failed to provide a FAPE during G.S.'s fifth-grade year (2018-2019) by: (1) failing to develop an IEP that included current assessment data and appropriate goals in basic reading skills; (2) failing to consider whether assistive technology was required to implement her IEP; and (3) failing to develop pre-vocational goals that would address her executive function deficits. With regard to the sixth-grade year (2019-2020), Plaintiffs identified virtually identical deficits in the IEP and added that Defendants also: (4) failed to provide appropriate reading instruction; and (5) failed to address all deficit areas, specifically math.

Plaintiffs seek an award of compensatory education and/or educational services, reimbursement for costs and expenses associated with G.S.'s private education at Currey Ingram Academy for the 2019-2020 and 2020-2021 school years, payment for placement at Currey Ingram Academy for the duration of these proceedings and until CMCSS "rectifies its deficient educational programming as it relates to G.S," and attorneys' fees and costs. (Doc. No. 1).

The Magistrate Judge concluded that the preponderance of the evidence does not support a finding that G.S. was denied a FAPE by CMCSS for the 2018-2019 or 2019-2020 school years,

and that no procedural or substantive violation of the IDEA occurred. (Doc. No. 34). The Magistrate Judge recommended denying Plaintiffs' Motion for Judgment on the Administrative Record, granting Defendant's Motion for Judgment on the Administrative Record, and dismissing this action. (*Id.*).

Plaintiffs filed the following Objections to the Report and Recommendation (Doc. No. 35):

1. Concerning the adequacy of the IEP with respect to reading, the Report confuses "educational methodology" with a school district's obligation to include appropriate and accurate present levels of performance data and related goals on an IEP.

2. The Report errs in finding that the IEPs included appropriate pre-vocational goals.

3. The Report ignores the evidence presented at the hearing that supports Plaintiffs' claims that CMCSS failed to address G.S.'s deficits in math.

4. The Report errs in its finding that the failure to conduct an assistive technology evaluation was not a violation of FAPE.

5. The Report errs in finding that the IEPs at issue were developed in recognition of G.S.'s unique and individual needs.

## IV. ANALYSIS

**A. Reading**

Plaintiffs object to the Magistrate Judge's finding that the IEPs developed for G.S. were not procedurally or substantively deficient with respect to the "present levels of performance" and goals for basic reading skills. In the motion for judgment on the administrative record, Plaintiffs argued that the IEP developed for the 2018-2019 school year was deficient because it did not include any Basic Reading Skills data or any goals in Basic Reading Skills and instead measured

5

reading progress using fluency probes. (Doc. No. 26 at 19 (citing Doc. No. 19-1, Tr. Transcript at 405, 412; and Doc. No. 19-2, Tr. Transcript at 1007-1020 Ex. 6)).

The Magistrate Judge found that "Plaintiffs failed to present evidence showing that reliance upon fluency assessments and goals was so far outside the norm of what was appropriate that it can be said that CMCSS failed to develop and implement an IEP that was not reasonably calculated to ensure that G.S. received necessary educational benefits." (Doc. No. 35 at 25). The Magistrate Judge found that evidence in the record shows CMCSS members of the IEP team believed that reading fluency assessment and goals were an appropriate educational method for assessing G.S.'s progress and setting goals for her, and that a difference in opinion about the appropriate methodology does not provide a basis for overturning the ALJ's decision on this issue. (*Id*. (citing *Hupp v. Switzerland of Ohio Loc. Sch. Dist*., 912 F. Supp. 2d 572, 598 (S.D. Ohio 2012) ("Parents [ ] have no right to compel a specific program or methodology."))).

Plaintiffs contend that the Magistrate Judge erroneously found that CMCSS's decision to rely on fluency measures of performance was reasonable and amounted to a difference in educational methodology. (Doc. No. 35 at 2-5). They argue that reading fluency and basic reading skills are completely different deficit areas and the substitution of one for the other is not the equivalent of the parents simply disagreeing with a specific program or methodology. (*Id*. at 2). Plaintiffs assert that their expert witness, Sandy Parus, testified that measuring reading fluency "is not a valid method for assessing progress in Basic Reading Skills." (*Id*. at 3). Plaintiffs' argument misrepresents Parus' testimony. When asked whether fluency is a good gauge of someone's achievement of basic reading skills," Parus responded, "It's not a good indicator. I think a lot of times, it's used [] as a curriculum-based measure and progress monitoring tool…. It does show growth [] in students in the words correct that they can read per minute. However, we need to look

at that piece of data cautiously as it is just one source of data." (Doc. No. 19-1, Tr. Transcript at 577-78). She explained that a student's fluency reading a particular passage will vary depending on their familiarity with the subject matter of the passage. (*Id.*). Contrary to Plaintiffs assertion, Parus does not state that fluency is not a valid method for assessing progress in basic reading skills. In fact, she states that it is used "as a curriculum-based measure and progress monitoring tool." (*Id.*).

Moreover, the record also contains testimony from Christina Campbell, who was a special education teacher and member of the IEP team at G.S.'s elementary school in 2018-2019. At the administrative hearing, Campbell offered testimony as an expert in special education. (Doc. No. 19-1, Tr. Transcript at 425). She testified that "it's accepted to measure basic reading skills – or basic reading progression, utilizing fluency as a measure because you can't increase your words per minute without increasing your basic reading skills." (Doc. No. 19-1, Tr. Transcript at 412; *see also id*. at 405 ("[F]luency is accepted as a measurement of basic reading skills or progress.")).

The Court agrees with the Magistrate Judge's finding that Plaintiffs failed to establish that CMCSS's reliance on fluency assessments and goals rather than a different methodology renders the IEP procedurally or substantively deficient.

Plaintiffs also argue that the Magistrate Judge failed to consider that the "nonsense word goal," which was added to the 2019-2020 IEP in late September 2019, was not reasonably calculated to ensure that G.S. received educational benefit. (Doc. No. 35 at 5-6). The 2019-2020 IEP (as revised) included a goal that G.S. "will correctly identify nonsense words with 80% accuracy as measured by weekly progress monitoring." (Doc. No. 19-3, Tr. Transcript at 1183, Ex. 33). Plaintiffs claim that although the goal appears to be designed to monitor progress in basic reading skills, it was not effectively implemented because the nonsense words were autogenerated

and G.S. did not make progress during the two months the goal was implemented. (Doc. No. 35 at 5-6; Doc. No. 19-3, Tr. Transcript at 1193-1196, Ex. 34-35 (showing five progress assessments between September 26, 2019, and November 21, 2019)).

Plaintiffs did not raise this specific argument before the Magistrate Judge. Although Plaintiffs argued that the nonsense word goal was not tied to the specific foundational skills that G.S. needed to master and they noted that the nonsense words were autogenerated, they did not explain why the implementation of the nonsense word goal was allegedly ineffective. (*See* Doc. No. 26 at 21-22). The Magistrate Judge did not err by failing to address an argument that Plaintiff did not expressly raise. *See Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting that the district judge generally will not consider arguments not presented in the first instance to the Magistrate Judge). However, the use of autogenerated nonsense words to measure progress toward a goal is a quarrel with the methodology chosen by the school district. *McLaughlin v. Holt Pub. Sch. Bd. of Educ.*, 320 F.3d 663, 673 (6th Cir. 2003) (administrative decisions regarding methodology and educational expertise are given due weight). While Plaintiffs have identified ways the assessment could provide more useful information to G.S.'s teachers, they have not shown that CMCSS's decision to use this particular assessment tool rendered the IEP deficient such that it was not reasonably calculated to ensure educational benefits. Finally, although Plaintiffs claim that the data demonstrated that G.S. was not making *any* progress on the nonsense word goal, she did in fact make some progress during that time – her score improved from 41 to 44 from the first to last assessment. (Doc. No. 19-3, Tr. Transcript at 1193-1196, Ex. 34-35). Though G.S. did not make dramatic progress during this eight-week period, the failure to do so does not establish that implementation of the goal resulted in an IEP that was not reasonably calculated to ensure that G.S. received educational benefits.

## B. Pre-Vocational Goals

Plaintiffs object to the Magistrate Judge's finding that "the IEPs at issue clearly included pre-vocational goals that were specific and formulated to G.S. and to her individual needs as a rising fifth and sixth grader" and that "the IEPs as written were not so minimal or inadequate that they can legally be characterized as procedurally or substantively deficient." (Doc. No. 35 at 6 (citing Doc. No. 34 at 25)). Plaintiffs argue that the Magistrate Judge ignored evidence that the same pre-vocational goals were repeated across multiple IEPs and that G.S.'s progress towards meeting the goals was uneven and inconsistent. (*Id*.).

In the motion for judgment on the administrative record, Plaintiffs argued that the CMCSS failed to develop any pre-vocational skills or provide strategies that would assist G.S. with staying organized and on task. (Doc. No. 26 at 25). They did not assert that stating similar goals each year rendered the IEP procedurally or substantively deficient. Again, the Magistrate Judge did not err by failing to address an argument that Plaintiff did not raise. This Court generally will not consider arguments not presented in the first instance to the Magistrate Judge. *See Swain*, 379 F. App'x at 517-18. Even if the Court were to consider the argument here, Plaintiffs do not explain why the fact that the goals – to independently begin and complete assigned tasks 75%-85% of the time – remained largely the same shows that the IEPs were procedurally or substantively deficient and not reasonably calculated to ensure that G.S. received educational benefits. Nor does the Court find that repetition of similar goals was inappropriate, particularly when G.S. continued to require improvement in this area.

The Court agrees with the Magistrate Judge's findings that Plaintiffs have not shown by a preponderance of the evidence that the IEPs at issue fail to satisfy the IDEA with regard to G.S.'s individual pre-vocational needs. The IEP team specifically considered G.S.'s pre-vocational needs

9

and updated and revised the IEP accordingly. While the IEPs did not include detail regarding strategies that would assist G.S. with staying organized and on-task, the IEPs recognized that this was a need, set goals for G.S. in this area, and provided for daily pre-vocational services with a special educator (in additional to the other special education services provided). (*See* Doc. No. 19-2 at PageID# 1225 (pre-vocational checklist completed Aug. 6, 2018); PageID# 1209, 1216 (discussing present level of pre-vocational performance and providing for daily pre-vocational services, Aug. 10, 2018); PageID# 1229, 1236 (same, Oct. 26, 2018); PageID# 1245, 1252 (same, Apr. 2, 2019)).

**C. Math**

Plaintiffs object to the Magistrate Judge's finding that they did not meet their burden of proof in demonstrating that CMCSS failed to address G.S.'s deficiencies in math. (Doc. No. 35 at 7-9). In the motion for judgment on the administrative record, Plaintiffs argued that CMCSS failed to add any math related goals to her IEP even though her struggles with math were well documented. (Doc. No. 26 at 23-24). Plaintiffs pointed to G.S.'s universal screener scores in math, which they contend indicate she should have received intervention in math beginning in August 2019.

The Magistrate Judge concluded that Plaintiffs had not met their burden to show that the failure to evaluate G.S. for a math disability caused substantive harm to G.S. and denied her a FAPE. (Doc. No. 34 at 29-30). Among other things, the Magistrate Judge found that the record contained "only bits and pieces of information concerning G.S.'s math deficits or how CMCSS addressed those deficits." (*Id.*). She noted that there was evidence that G.S. was placed in an RTI program during fifth grade and that she moved between the different levels of the program as her math scores changed, but no evidence in the record that G.S. had an obvious but ignored deficit in

10

math that would have qualified her for an eligibility status for a math specific learning disability, no evidence regarding what program changes would have resulted if she had been found eligible for a specific learning disability in a math deficit, no evidence of how changes to the math program would have impacted G.S.'s education and been different from the RTI program, and no evidence of G.S.'s history of moving between the different levels of the RTI program. (*Id*.). In addition, the Magistrate Judge noted that there was no expert testimony from Plaintiffs on the issue of a math deficit and no expert testimony supporting a finding that a FAPE was denied because of CMCSS's failure to evaluate G.S. for a math disability. (*Id*.). The Magistrate Judge also observed that G.S.'s parents never requested an eligibility determination in math. (*Id*.).

Plaintiffs' objections to the Magistrate Judge's findings point to a number of occasions where G.S.'s parents and teachers raised concerns about G.S.'s math performance and they argue that the finding that the parents did not request an eligibility determination in math is an erroneous application of the law. (Doc. No. 35 at 8-9). Plaintiffs also object that although the Magistrate Judge "gave CMCSS credit" for placing G.S. in RTI during fifth grade, she did not address the failure to place her in RTI at the beginning of sixth grade. (*Id*.).

The Court agrees with the Magistrate Judge that Plaintiffs have not shown by a preponderance of the evidence that the IEP was procedurally or substantively deficient for failing to conduct a math eligibility determination or provide intervention in math. As an initial matter, although the Magistrate Judge observed that G.S.'s parents did not request an eligibility determination in math, this was not the basis for her finding that Plaintiff's did not meet their burden. Moreover, as noted by the Magistrate Judge, there is evidence in the record that G.S. was in RTI for math at times during her fifth-grade year, and that when she showed improvement, she was moved out of RTI. (Doc. No. 19-1, Tr. Transcript at 869). Although Plaintiffs assert that RTI

11

is part of the progression to a math eligibility determination, they have not shown that failure to place G.S. in math RTI in August 2019 resulted in a denial of a FAPE. The portion of the record cited by Defendants is testimony by Ms. Economos, which indicates that G.S. was "high risk" in August 2019, but offers no additional information. (*See* Doc. No. 26 at 24 (citing Doc. No. 19-1 at 761)). Ms. Economos' testimony was truncated by an evidentiary dispute between counsel about the format of the testing data. (*See* Doc. No. 19-1 at 761-767).

Miranda Morris, an expert in school psychology, testified that when she evaluated G.S. in 2018, G.S.'s math skills were in the average range. (Doc. No. 19-1, Tr. Transcript at 457). She also explained that special education services in math are not warranted just because a student is having some difficulty with the subject. (*Id*. at 476). She added that the school tries to address needs in a least restrictive environment, such as through RTI interventions in the general education environment. (Doc. No. 19-1, Tr. Transcript at 476). The April 2019 IEP shows that G.S. was provided math inclusion services with a special educator five days per week for 55 minutes per day, (Doc. No. 19-2 at PageID# 1252), and, in November 2019, CMCSS was discussing with the parents moving G.S. into RTI math and see if she was eligible for a deficit in math, but G.S. withdrew from CMCSS before the change could be implemented. (*See* Doc. No. 19-1, Tr. Transcript at 873, 915).

Considering the evidence in the record and the lack of expert testimony from Plaintiffs on the issue of a math deficit, the Court agrees with the Magistrate Judge that Plaintiffs have not established by a preponderance of the evidence that the IEPs were substantively or procedurally deficient for failure to evaluate G.S. for a math disability or to place G.S. in math RTI in August 2019.

**D. Assistive Technology**

In the Motion for Judgment on the Administrative Record, Plaintiffs argued that the IEPs in effect for the 2019-2020 school year failed to provide any assistive technology support for G.S. and that CMCSS did not complete a comprehensive assistive technology evaluation, only an observation. (Doc. No. 26 at 24-25). The Magistrate Judge rejected this argument on grounds that the IEP clearly included assistive technology accommodations for G.S. – she was provided a laptop with software directed at her reading skills deficits, and text-to-speech programs to use for testing. (Doc. No. 27 at 34). In addition, the Magistrate Judge found that "the preponderance of the evidence shows that CMCSS assistive technology staff observed and assessed G.S.'s need for assistive technology in the fall of 2019 and determined that her laptop already contained the necessary software." (*Id*.). The Magistrate Judge found that Plaintiffs had "failed to provide any evidence at the hearing of what additional benefit would have arisen from an assessment, and failed to provide any evidence of substantive harm due to the lack of a complete assistive technology assessment." (*Id*.).

Plaintiffs object to the Magistrate Judge's determination on grounds that the failure to complete an evaluation is itself "a substantive denial of FAPE in the areas for which the District failed to evaluate." (Doc. No. 35 at 10 (citing *Downingtown Area Sch. Dist. v. G.W*., No. 19-5424, 2020 WL 5981902, at *11 (E.D. Penn. Oct. 8, 2020)). The Court is not persuaded that the reasoning in *Downingtown* requires a finding in this case that failure to conduct a complete assistive technology assessment deprived G.S. of a FAPE. First, CMCSS observed and assessed G.S.'s need for technology and provided her a laptop with assistive technology. (*See* Doc. No. 19-3 at PageID# 1440-42). Second, in *Downingtown* the parties had agreed to conduct certain specific evaluations with an expectation that the evaluations "would produce information to drive IEP development"

13

and the evaluations were agreed to be of "particular importance in [that] case," yet the school district stopped the evaluation when the student requested a due process hearing. *Downingtown*, 2020 WL 5981902, at *7.

The Court agrees with the Magistrate Judge's determination that Plaintiff has not shown that the failure to conduct a "comprehensive" technology evaluation deprived G.S. of a FAPE.

### E. Individual Needs

Plaintiffs object to the Magistrate Judge's finding that the IEPs were sufficiently individualized and passed the "reasonableness" test. (Doc. No. 35 at 10). Plaintiffs argue the Magistrate Judge failed to consider three pieces of evidence: (1) that G.S.'s reading assessment scores never advanced above the 1st percentile; (2) that her IEP did not include math related goals despite evidence that she struggled in math; (3) that she was placed in a class consisting of 10-12 students even though her teacher recognized that she needed a smaller class size to benefit from her reading instruction and Ms. Parus recommended a class size of no more than six students.

This objection is without merit. The Magistrate Judge did consider the first two pieces of evidence. (*See* Doc. No. 34 at 5 (quoting a portion of the IEP stating that G.S. was "still falling at the 1st percentile"), 9 (noting that G.S. remained in the first percentile), n.5 (noting that the Parus assessment confirmed that G.S. "remained in the lowest testing percentile"), 29-30 (considering failure to address math deficits)). With regard to the class size, Plaintiffs do not explain how the cited evidence shows that a class size of 10-12 resulted in an IEP that was not sufficiently individualized or reasonable to permit G.S. to make appropriate progress in light of her circumstances. To be sure, smaller classes and more individualized attention is generally considered to be "better," but the IDEA does not require an IEP to be *ideal* only that it is *reasonable*. *Endrew F.*, 137 S. Ct. at 994.

## III. CONCLUSION

The Court has reviewed the R&R and each of Plaintiffs' objections, and conducted a *de novo* review of the record. For the reasons set forth above, the Court concludes Plaintiffs' objections are without merit and are **OVERRULED** and the Report and Recommendation of the Magistrate Judge (Doc. No. 35) is **ADOPTED** and **APPROVED**. Accordingly, Plaintiffs' Motion for Judgment on the Administrative Record (Doc. No. 25) is **DENIED**, Defendant's Motion for Judgment on the Administrative Record (Doc. No. 28) is **GRANTED**, and the ALJ's Final Order is **AFFIRMED**.

This Order shall constitute the final judgment in this case under Fed. R. Civ. P. 58.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE